Bitters, Respondent, vs. Central Mutual Hail & Cyclone Insurance Company of Appleton, Appellant.

*November 6—December 3, 1935.*

For the appellant there was a brief by *Walter P. Melchior* of New London, attorney, and *Benton, Bosser, Becker & Parnell* of Appleton of counsel, and oral argument by *Mr. Edgar E. Becker* and *Mr. Melchior*.

*Harold W. Krueger* of Oconto, for the respondent.

MARTIN, J.   Certain by-laws of the appellant company are incorporated in the policy of insurance and form a part of

the contract.   Secs. 1, 2, 3, and 4 of art. XI of the by-laws provide:

"Section 1.   On the first day of October of each year, excepting when Sunday falls on that day, or as soon thereafter as practicable, the board of directors shall meet and review all adjustments, and determine the *rate* of assessment necessary to pay losses and expenses, and levy the annual assessment.   After said meeting the secretary shall immediately mail a notice to each member showing the amount of his indebtedness.

"Section 2.   All assessments made against the members of the company shall be payable at the home office on or before the twentieth day of October of each year.

"Section 3.   Should a member fail to pay any assessment levied by this company to pay losses and expenses, he shall stand suspended until such assessment is paid in full and the company will not be liable for any loss which may occur during the time of such suspension.

"Section 4.   When an assessment is levied the secretary shall immediately notify by mail each member of his share of the assessment and the member shall, upon receipt of such notice, remit the amount of his assessment on or before October twentieth to the company, or pay the collector named in the notice, the amount of his indebtedness, and should he fail to do so the secretary shall send him a second notice adding a penalty of ten per cent.   If it becomes necessary to collect by suit, the member against whom suit is commenced shall be liable for his indebtedness with penalty and all costs and other fees including an attorney's fee of ten dollars, all of which amount shall constitute a lien against the member's interest in the grain or other property insured for that season in this company."

The facts are not in dispute.   Appellant is a mutual insurance company organized for the purpose of insuring farmers against injury caused by cyclone, tornado, and windstorms. It is not a town mutual company.   The by-laws require that the board of directors shall meet on the first day of October of each year, excepting when Sunday falls on that day, and

review all adjustments and determine the rate of assessment necessary to pay losses and expenses, and levy the annual assessment.

The sole controversy here relates to the action of the board of directors at its meeting held on October 1, 1932. The minutes of said meeting, as disclosed by the secretary's record, are as follows:

"October 1, 1932. Minutes of the Board of Directors at 10 o'clock a. m. The Board of Directors' meeting held at the secretary's office at 10 o'clock, October 1st by President Wm. Menning in the chair. After some brief remarks by the president your secretary was requested to read the minutes of the last meeting which were read and adopted. The next order of business was the reading of the secretary's report in which your secretary recommended an assessment levy of one mill on all cyclone insurance in force and one per cent on all hail insurance in force on October 1, 1932. On motion made by Isadore Scholl and seconded by W. P. Melchior, said motion was adopted. After a brief discussion of the board of directors on the subject of investing the income in assessment it was voted and carried that the same be invested in government bonds and/or municipal bonds. There being no other business the meeting adjourned *sine die*."

The trial court rested its decision on the rule as laid down by this court in *Milwaukee Trust Co. v. Farmers' M. F. Ins. Co.* 115 Wis. 371, 91 N. W. 967. In *Bartz v. Eagle Point Mut. Fire Ins. Co.* 218 Wis. 551, 260 N. W. 469, the resolution adopted by the board of directors was as follows:

"Be it resolved by the board of directors of the Eagle Point Mutual Fire Insurance Company *that their secretary* levy an assessment of four and one-half mills on a dollar on all insurance issued by said company that will be in force October 1, 1932 . . . amount of said assessment will be about $80,000 and the due date of said assessment will be December 1, 1932. Notice of said assessment to be mailed October 1, 1932, to all policyholders to their last-known address."

Pursuant to such resolution the secretary mailed, and the plaintiff Bartz received, a notice under date of October 1, 1932, in the following form:

"Your *pro rata* of assessment under the following notice is $13.78 under policy number 20381, with treasurer's fee."

The notice then sets out the substance of the foregoing resolution, a list of losses incurred from October 1, 1931, to October 1, 1932, giving the name of the insured and the amount of the loss in each case, then provides:

"Said assessment is to be paid to the treasurer, Louis Goetz, whose post-office address is Cadott, Wisconsin, . . . by presenting this notice any time within sixty days from this date."

It was contended by the plaintiff that neither the resolution adopted nor the notice sent to the plaintiff was in compliance with the statute, because the resolution authorized the secretary to make, and the secretary made, the assessment, as to which contention this court said:

"It is considered that this contention is without merit. . . . It is further argued that the secretary is to make the assessment instead of the board. It is considered that it clearly appears that what the resolution, which was the act of the board, did was to direct the secretary to give notice of the assessment which was thereby made. While the resolution is inartistically framed, the meaning is clear."

The trial court set aside the jury verdict in plaintiff's favor and directed the complaint to be dismissed on the ground that the policy sued upon was not in force by reason of the nonpayment of the assessment. This court affirmed the judgment.

In the instant case, respondent's counsel contends that there is no evidence that a resolution was passed by the board of directors levying an assessment. Sec. 1 of art. XI of the by-laws provides:

". . . The board of directors shall meet and review all adjustments, and determine the rate of assessment neces-

sary to pay losses and expenses, and levy the annual assessment. . . ."

The secretary's minutes covering the meeting of the board of directors held on October 1, 1932, may be somewhat meager. However, the meeting was for the purpose of levying the annual assessment. The secretary's minutes show that he read his report to the board of directors in which he recommended an assessment levy of one mill on all cyclone insurance in force and one per cent on all hail insurance in force on October 1, 1932. It then became the duty of the directors to determine the rate of assessment necessary to pay losses and expenses. With the secretary's report and recommendation as to the assessment before the board, it appears that a motion was made by one member of the board and seconded by another member that the secretary's report and recommendation be adopted, and said motion was adopted. Whether the action of the board be called a motion or a resolution is immaterial. It is clear that the report and recommendation of the secretary, when acted upon by the board of directors, in legal effect became the action of the board. *Bartz v. Eagle Point Mut. Fire Ins. Co., supra.*

In 32 C. J. p. 1215, § 364, it is said:

"The assessments are to be levied by the person or body vested with that authority and charged with that duty by the by-laws or fundamental law of the company. This is usually the board of directors. As this is a discretionary power, it cannot be delegated, although a complete ratification of the acts of a functionary named to levy an assessment amounts to the exercise of that discretionary power and hence is a valid levy. An assessment may be sustained as made under the directors' management and control, although they did not examine the figures of the officers who made it up . . . and a vote of the directors directing the secretary to levy the assessment is a sufficient levy by the directors."

Immediately following the directors' meeting and under date of October 1, 1932, the secretary mailed a notice of the annual assessment to the respondent, informing him of the

assessment, the rate, and the amount due from him; further, that it was in the hands of the secretary for collection within thirty days. The amount of respondent's assessment was $2.59. Respondent having failed to pay his assessment, the secretary mailed him a second notice thereof on March 20, 1933. The second notice stated that unless the assessment was paid to the secretary of the company within ten days the policy would stand suspended until the assessment would be paid, and that the company would not be liable for any loss which might occur during the time of the suspension. Respondent disregarded this notice, and a third notice was mailed to him in April. He paid no attention to the several notices until the day following the destruction of his barn, at which time he mailed a postal money order to the secretary, purporting to be in payment of his assessment. The insurance company declined to accept payment, and denied liability for the loss on the ground that the policy was suspended on the date loss occurred, by reason of nonpayment of the assessment. Had the defendant been a town mutual company, the notices of the assessment would have been insufficient and suspension of the policy avoided under the rule of *Milwaukee Trust Co. v. Farmers' M. F. Ins. Co., supra,* and *Cotter v. Central Mut. H. & C. Ins. Co.* 200 Wis. 363, 228 N. W. 491. In the *Milwaukee Trust Co. Case, supra,* the court said:

"The record discloses affirmatively that there was no information in fact notified to the assured; that the publication failed to contain any fair notification of the assessment, by omitting information as to its amount; and that the mailed notice could not suffice to supply this defect, for the reason that it also lacked one of the elements required by the statute. Hence we must conclude that there is no proof of notification such as required by the by-law."

The cases relied on by respondent, *Breakstone v. Appleton Mut. F. Ins. Co.* 149 Wis. 303, 135 N. W. 853; *Einerson v. Wisconsin Tornado Mut. Ins. Co.* 207 Wis. 318, 241 N. W. 358; and *Tomashek v. Hartland Farmers Mut. F.*

*Ins. Co.* 212 Wis. 622, 250 N. W. 447, are distinguishable from the case at bar, because of different statutory provisions being applicable and different by-laws. In the *Breakstone Case*, the statute involved, as interpreted by the court, required notice to the policyholder of the gross amount levied upon the particular class of policies subject to assessment, the sum due from such policyholder as his share thereof, and the time within which and to whom payment is to be made. This court said:

"We are unable to find anything of that sort in the notice in question. It states the amount of losses to be paid and insufficiency of funds therefor, rendering the making of an assessment necessary; thus clearly indicating that the amount of the assessment was different from the amount of losses waiting for payment. The specific per cent of assessment 'upon the premium charged' merely referred to the rate of assessment. That did not indicate the amount of the assessment nor furnish means for determining it by computation."

We have the same situation in the *Einerson* and *Tomashck Cases, supra*. Under the statutes and by-laws applicable, notice to the policyholders of the gross amount of the respective assessments was required.

Appellant company was organized under ch. 89, Stats. 1898 (secs. 1966—2 to 1966—12). By sub. 1 (h) of sec. 1941*g*, ch. 460, Laws of 1909, the statutes under which appellant was organized were repealed, with the saving clause that the sections so repealed should be considered as a part of the by-laws of the corporation theretofore organized and then doing business under said statutes. Under no section of the statute nor any by-law was appellant company required to give notice to its policyholders of the gross amount of an assessment. The by-laws required that the board of directors determine the rate of assessment necessary to pay losses and expenses; that the secretary give notice by mail to each member, showing the amount of his indebtedness and his share of the assessment. The respond-

ent had such notice in the instant case. He disregarded all notices until the loss was sustained. The day following, he tendered payment of his assessment, which was declined. Of course, tender of payment of the amount of the assessment after the loss occurred would not operate to reinvest respondent as of his rights under the policy before default and suspension. *Stutzman v. Cicero Mutual Fire Ins. Co.* 150 Wis. 254, 257, 136 N. W. 604.

Obviously, the provision for suspension during default is put in policies to insure prompt payment of assessments. If the respondent could remain in default, make no payment until a loss had occurred, and then pay his assessment and recover the loss, there would be little inducement to pay assessments. The situation is of the respondent's own creation. He cannot recover in this action.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.