JOHNSON and another, Respondents, vs. HARTLAND FARM-
ERS' MUTUAL FIRE INSURANCE COMPANY, Appellant.

*December 4, 1935—January 7, 1936.*

For the appellant there was a brief by *Adolph P. Lehner* and *Lehner & Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondents there was a brief by *Harold W. Krueger* of Oconto, and *Silverwood & Fontaine* of Green Bay, and oral argument by *Mr. A. B. Fontaine* and *Mr. Krueger.*

NELSON, J. The plaintiff, Ernest C. Johnson, is a farmer. The plaintiff, Perry Peters, is the receiver of the Oconto National Bank of Oconto. The defendant is a town mutual fire insurance company organized under the laws of this state. The plaintiff Johnson and his wife, Florence C., purchased certain farm premises from Helen M. Hartley on September 24, 1925. At that time the buildings and the personal property thereon situated were insured by the defendant against loss by fire under a policy issued to Helen M. Hartley. That policy was dated May 28, 1921, and insured the property for a term of five years. The Johnsons purchased the farm subject to a mortgage of $7,000 held by the Oconto National Bank. The deed conveyed and warranted the premises therein described to "Ernest C. Johnson and Florence C. Johnson, or the survivor of them, as joint

tenants, not as tenants in common." The deed was executed on September 24, 1925. The policy of insurance theretofore issued to Helen M. Hartley was apparently assigned to Ernest C. Johnson and Florence C. Johnson, joint tenants (the policy not having been produced), since the following entry appears in the books of the defendant:

"Assigned Sept. 26, 1925, to Ernest C. Johnson and Florence C. Johnson, joint tenants.

"Consent given Oct. 3d, 1925.

"GUST DRAGE, Sec.

"Loss if any payable Oconto National Bank."

Shortly before the Hartley policy expired, the plaintiff Ernest C. Johnson signed what purported to be an application for insurance presented to him by Otto Yahnke, one of defendant's agents. On that application were separately listed the amounts of insurance on the dwelling house, household furniture, barns, granary, machine shed, silo, grain, hay, and fodder, horses, cows, farming equipment, etc. At the end of the blank there was this clause:

"Loss, if any, payable to —— Mortgagee as his interest may appear"

Also the following clause:

"All situated in the Town —— in the County —— and State of Wisconsin, on Section 31, Town 27, Range 21."

Then followed ten questions, only three of which were answered. The questions and the answers were as follows:

"Is there any other insurance on the property? No.

"Is the property incumbered; if so, to what amount? None.

"Is the property occupied by owner or tenant? Owner."

The description of the premises did not contain the correct number of the section. The answers were in the handwriting of the agent. The incompleteness of the application indicates that it was intended to be nothing more than a

request or authorization to renew the policy which was about to expire, and to list the properties insured and the several amounts of insurance desired. The defendant thereafter issued a policy in the name of Ernest C. Johnson, without noting therein that loss, if any, was payable to the Oconto National Bank. The defendant mailed the policy to Oconto National Bank which held it for about two years and then turned it over to the plaintiff Johnson. The residence was totally destroyed by fire on April 14, 1931. The house was insured for $2,000. It was agreed that the unsalvaged household furniture and equipment destroyed was worth $407. Concededly, the fire was accidental. The constitution of the defendant company contained the following provision:

"Article 7. The Wisconsin Standard Fire Insurance Policy is adopted for exclusive use by this corporation, subject however, to all special regulations of this corporation lawfully applicable to its organization, membership, policies, or contracts of insurance, as the same may be written or printed upon, attached or appended thereto."

The policy issued to the plaintiff had printed in large type at the top of the first page thereof the following: "Standard Fire Insurance Policy of the State of Wisconsin."

On the outside of the policy appears the following in heavy font type: "Standard Fire Insurance Policy of ——. Read Your Policy."

The policy issued did not comply with the sample form found in the statutes for the year 1925, in force in May, 1926. Many of its provisions differed from those of the standard fire insurance policy in force at that time. The particular provisions of the policy which require consideration are the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, . . . or if the interest of the insured be other than unconditional and

sole ownership; . . . or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

The standard fire policy of this state at that time provided as follows :

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership."

"Unless otherwise provided by agreement in writing added hereto this company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, *and during the time of such incumbrance this company shall be liable only for loss or damage to any other property insured hereunder.*"

The plaintiff and his wife concededly mortgaged certain personal property to the Abrams State Bank on December 12, 1929, to secure a note for $550. That mortgage was renewed several times to secure unpaid balances of that note. In the fall of 1929, the defendant levied an assessment upon its members for the purpose of paying losses. Four notices of that assessment were sent to the plaintiff. None of said notices, however, contained any notice of "the amount of such loss or assessment," although all of them did state that the assessment was two mills on every dollar of insurance in force on December 31, 1929, and also the amount that was due from the plaintiff.

The court found, among other things, that the defendant had due notice that the premises in question were owned by Johnson and his wife as joint tenants at the time of the issuance of the policy to him, that the defendant had notice that the real estate was mortgaged to the Oconto National Bank at the time of the issuance of the policy, and concluded that the plaintiff was entitled to judgment.

Although the defendant set up in its answer numerous defenses to the action, several of them were abandoned at the trial and some have been abandoned since.

The principal contentions now made by the defendant are: (1) That the policy is void because the plaintiff Johnson was not the sole and unconditional owner of the premises at the date of the policy, and (2) that the policy became void because the plaintiff Johnson and his wife executed chattel mortgages on some of the personal property other than that which was destroyed.

The plaintiff concedes that at the time the policy was issued he was not the sole and unconditional owner thereof, but contends that, since the property was owned in joint tenancy by him and his wife, the provision as to sole and unconditional ownership did not operate to void the policy. He cites sec. 203.025, Stats. 1931, which provides:

"The provisions of the standard fire insurance policy as to sole ownership and change of ownership, set forth in lines 22 to 31 of said standard fire insurance policy, shall not be held to apply to cases where the ownership is a joint tenancy of the insured and the wife or husband of the insured or the change of ownership is from sole ownership to joint tenancy of the wife or husband of the insured."

The plaintiff argues that that section amounts to a legislative construction of the sole and unconditional ownership clause which the legislature had the power to construe. The policy involved here was issued in 1926. The statute recited was adopted in 1929. We have grave doubts as to the power of the legislature to construe an existing statute, that power ordinarily being a judicial rather than a legislative function,—especially is it doubtful where private rights are invaded or where such a legislative construction operates to impair the obligation of an existing contract. *Stockdale v. Atlantic Ins. Co.* 20 Wall. (87 U. S.) 323. Whether sec. 203.025 was effective to modify existing policies, it is not necessary at this time to decide, and therefore decision of that question is reserved.

It appears that, when Johnson and his wife bought the farm, the policy theretofore issued by the defendant to Helen M. Hartley was assigned to them as joint tenants and that the defendant consented to such assignment. The entry in the books clearly shows that and also that loss, if any, was payable to Oconto National Bank. The court found that the defendant had due notice that the premises were owned by the plaintiff and his wife as joint tenants, and that it had such notice at the time of the issuance of the policy. While there is no testimony that the plaintiff Johnson told the defendant at the time the policy was issued to him that the title to the farm was in him and his wife, the court no doubt so found because of the law which charges an insurance company, upon the renewal of a policy of insurance, with such knowledge as it had at the time it issued a prior policy. In *Farley v. Spring Garden Ins. Co.* 148 Wis. 622, 134 N. W. 1054, it was said:

"Although the Wisconsin standard policy contains a provision that it 'shall be void if the subject of insurance be a building or ground not owned in fee simple' yet a company issuing such a policy and receiving and retaining the premium with knowledge that the insured does not own the land upon which the building stands is estopped from declaring the policy void.

"The company's knowledge of such fact at the time of issuing the policy is equally binding upon it when it issues a renewal thereof; and it is immaterial whether the company's agent had in mind, at the time of the renewal, the information which he had received when the original policy was issued."

To the same effect is *Newburg v. United States Fidelity & Guaranty Co.* 207 Wis. 344, 241 N. W. 372. It seems quite immaterial whether the knowledge which estops an insurance company from declaring a policy void comes to it when an original policy is issued or whether it comes to it

when an existing policy is assigned and transferred to another with its consent.

The contention that the policy became void because Johnson and his wife executed chattel mortgages on certain of the insured personal property, which was not burned, is not sound. Under the terms of the policy as actually written, the whole policy would become void upon the execution of a chattel mortgage, covering any of the personal property insured. Under the circumstances shown, it is our opinion that the defendant is estopped from asserting that the provisions of its policy were not those of the standard fire insurance policy of this state, in force at the time the policy was issued. The defendant's constitution specifically adopted such standard policy. The policy issued was denominated such a policy. Under the circumstances, the provisions of the Wisconsin standard fire insurance policy must be considered as embodied in the policy notwithstanding the fact that the provisions of the policy issued materially differed therefrom. Article 7 of the defendant's constitution, which adopted the standard fire insurance policy as its own, was printed in full as a part of the policy issued. The plaintiff Johnson, in our opinion, had a right to rely on the representation that the policy issued to him complied with the defendant's constitution and actually was what it was denominated and represented to be. The provision of the standard form relating to chattel mortgages, heretofore recited, was recently construed, and it was held that that provision does no more than affect the coverage of the mortgaged property, and that the giving of a chattel mortgage does not render the whole policy void or affect the coverage of the property which is not mortgaged. *Mielke v. National Reserve Ins. Co.* 216 Wis. 148, 256 N. W. 776.

The defense based on the nonpayment of the assessment appears to have been abandoned, for the reason that the no-

tices of assessment given to the plaintiff did not conform to the existing law and therefore gave no notice to the plaintiff, as was held in *Milwaukee Trust Co. v. Farmers' M. F. Ins. Co.* 115 Wis. 371, 91 N. W. 967; *Breakstone v. Appleton Mut. F. Ins. Co.* 149 Wis. 303, 135 N. W. 853; *Cotter v. Central Mut. H. & C. Ins. Co.* 200 Wis. 363, 228 N. W. 491; *Einerson v. Wisconsin Tornado Mut. Ins. Co.* 207. Wis. 318, 241 N. W. 358.

We have given careful consideration to the other contentions made by the defendant. We consider them either unsound or not controlling, and therefore no useful purpose would be served by discussing them.

*By the Court.*—Judgment affirmed.