POLAR MANUFACTURING COMPANY and another, Respondents, v. INTEGRITY MUTUAL INSURANCE COMPANY, Appellant.

*May 6—June 2, 1959.*

444

For the appellant there were briefs by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Paul D. Hilton* and *Lee Nutt* of counsel, all of Wausau, and oral argument by *Herbert L. Terwilliger.*

For the respondents there was a brief by *Schmitt & Wurster* of Merrill, and *Charles B. Avery* of Antigo, for the Polar Manufacturing Company, and *David W. Goodnough* of Antigo, for the Fidelity Savings Bank, and oral argument by *Mr. Leonard F. Schmitt, Mr. Goodnough,* and *Mr. Avery.*

BROADFOOT, J.    Upon this appeal the defendant contends that the special verdict and the court's instructions were erroneous. This involves a construction of sec. 209.06 (1), Stats. 1955, which reads as follows:

"No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation, or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

The trial court interpreted the statute to mean that any inaccurate statement in the application must be false and made with intent to deceive in order to avoid the policy. We cannot agree that this is a proper construction of the statute. In *Olson v. Herman Farmers Mut. Ins. Co.* 187 Wis. 15, 18, 203 N. W. 743, this court made the following statement with reference to the statute:

"It will be observed that the last lines of the statute, 'or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss,' are connected with what precedes by the disjunctive 'or.' In other words, it is probably the true construction of the statute that if the misrepresentation in an application regularly obtained increases the risk, that is sufficient to defeat recovery even if there is no actual intent to deceive."

In another portion of the *Olson Case* the word "erroneous" is used with reference to a statement in the application.

Therefore we construe the statute to mean that if there is an inaccurate or erroneous statement in the application for insurance the court should first determine whether it is material. Erroneous or inaccurate statements might be made which had no materiality.

From the record in this case it is clear that the answer to question 47 was an inaccurate or erroneous statement. It follows that there might be three grounds for avoiding the policy: (1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss. Therefore the special verdict should have inquired as to whether such statement was false and made with intent to deceive. Further inquiry should have been made as to whether or not the inaccurate statement increased the risk to the defendant company. The jury should have been instructed to answer the last question regardless of its answer to the first. The form of the special verdict was erroneous and this will require a new trial. The trial court's instructions were correct when applied to its construction of the statute, but can be adapted to the new verdict.

The defendant further contends that its motion for a directed verdict should have been granted. We cannot agree with that contention. There are issues of fact to be passed upon by a jury. Polar Manufacturing Company was organized in 1943. The corporation purchased certain businesses and property from George Klement. During the trial the defendant made an offer of proof that Klement was the only salaried officer of the corporation; that he and his family held a majority of stock therein; and that Klement as an individual had sustained fire losses between 1936 and 1939. This offer of proof was made in connection with the claim that the answer to question 50 was inaccurate. The trial court correctly ruled that question

50 was properly answered. It made inquiry only as to the corporation and no questions were asked Klement as to whether he, as an individual, had ever sustained a fire loss.

The bank contends that the judgment should be affirmed to the extent of its mortgage interest in the insured property regardless of how the other questions are determined. This raises the question of the effect of a standard mortgage clause attached to a standard fire insurance policy. Our attention is called to three opinions by this court touching on the subject. In *Prudential Ins. Co. v. Paris Mut. Fire Ins. Co.* 213 Wis. 63, 250 N. W. 851, the court was confronted with a situation where the owner of the insured property changed the use of the premises to one that increased the risk to the insurance company. So far as the mortgagee's interest is concerned, the court merely stated (p. 67):

"We are not here concerned whether installation of the still voided the policy as to the owner, as the terms of the mortgage clause of the rider expressly provide that acts of the owner or occupation of the premises for more hazardous purposes shall not invalidate the insurance of the mortgagee."

In *State Bank of Chilton v. Citizens Mut. Fire Ins. Co.* 214 Wis. 6, 252 N. W. 164, the issue was the right of the insurance company under a clause in the policy to repair or rebuild a building damaged or destroyed by fire. The mortgagee felt that it was not bound by that provision in the policy. This court held that it was bound by the provisions of the policy since it was a form of policy prescribed by statute. However, the court made the following statement with reference to mortgagees (p. 11):

"One having a mortgagee interest in property may protect that interest in one of three ways: (1) Under a simple loss-payable or option mortgage clause, the mortgagee may

be simply an appointee of the insurance fund; (2) by virtue of the standard mortgage clause, often referred to as the subrogation clause such as the one attached to the policy in this case; (3) by a policy procured by and issued to the mortgagee."

In *Bank of Cashton v. La Crosse C. S. T. M. I. Co.* 216 Wis. 513, 257 N. W. 451, judgment was entered in favor of the mortgagee for the amount of fire loss even though the owner of the property had increased the risk to the insurance company by the operation of an illicit still. The mortgage clause thereon was a so-called uniform mutual insurance mortgage clause which differed in some respects from the standard mortgage clause.

In an annotation in 124 A. L. R. 1034, it is stated that a majority of the courts in this country hold that the standard mortgage clause making the mortgagee a payee and stipulating that the insurance shall not be invalidated by the mortgagor's acts or neglect constitutes an independent contract between the mortgagee and the insurer. Consideration therefor is found in the requirements of duties to be performed by the mortgagee under the terms of the mortgage clause, such as notifying the company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the mortgagee, and the promise of the mortgagee to pay premiums for increased hazards and to pay premiums upon demand in case of default in payment thereof by the mortgagor.

In 45 C. J. S., Insurance, p. 230, sec. 507, it is stated that the standard mortgage clause amounts to an independently enforceable contract which shall not be invalidated by any act or neglect of the mortgagor or owner either before or after the attachment or issuance of the mortgage clause. 29 Am. Jur., Insurance, p. 448, sec. 553, states the same rule.

In none of the three Wisconsin cases referred to above has this court stated directly that the mortgage clause constitutes a separate independent contract. However, language in the opinions in those cases indicates that this court considered the standard mortgage clause to be such an independent contract.

We do not think it would be proper procedure to affirm the judgment as to the mortgagee's interest since a new trial must be held as to the liability of the insurance company to the plaintiff. However, when judgment is entered following the new trial the bank will be entitled to recover from the defendant the amount of its mortgage with interest, unless it should develop that the bank had failed to comply with any of its obligations under the mortgage clause. In the event that the new trial results in a determination of no liability by the defendant to Polar, the judgment shall provide for subrogation of the mortgagee's rights to the defendant as provided in the mortgage clause.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

MARTIN, C. J., took no part.